1  Daniel M. Hattis (SBN 232141)
   Paul Karl Lukacs (SBN 197007)
2  HATTIS & LUKACS
   11711 SE 8th Street, Suite 120
3  Bellevue, WA 98005
   Telephone: (425) 233-8650
4  Facsimile: (425) 412-7171
   Email: dan@hattislaw.com
5  Email: pkl@hattislaw.com

6  *Attorneys for Plaintiff*
   *and the Proposed Class*

7

8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELLEN JONES,<br>for herself, as a private attorney general,<br>and on behalf of all others similarly situated,<br><br><br><br>Plaintiff,<br><br>v.<br><br>PENNEY OPCO LLC, and<br>DOE DEFENDANTS 1 to 5,<br><br><br>Defendant. | Case No.<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR:**<br><br>**(1) VIOLATION OF CAL. CIVIL CODE § 1750** *et seq.***;**<br><br>**(2) VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17500** *et seq.***;**<br><br>**(3) VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200** *et seq.*<br><br>JURY TRIAL DEMANDED |

CLASS ACTION COMPLAINT

**HATTIS & LUKACS**
11711 SE 8ᵗʰ St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Plaintiff Ellen Jones, individually, as a private attorney general, and on behalf of all others similarly situated, alleges as follows, on personal knowledge and the investigation of her counsel, against Defendant Penney OpCo LLC ("JCPenney" or "Defendant"):

## I. INTRODUCTION AND SUMMARY

1. JCPenney operates JCPenney retail stores and its website, jcpenney.com, where it advertises, markets, and sells clothing, footwear, accessories, jewelry, home furnishings, beauty products, and other related items throughout California and the United States.

2. For years, JCPenney has engaged in a massive false discount advertising scheme across nearly all of its products on both its website and in its retail stores. Specifically, JCPenney advertises perpetual, never-ending discounts for approximately 90% of its products. JCPenney's discounts typically range from between 25% to 70% off of JCPenney's advertised list prices for the products. JCPenney represents these list prices to be the regular and normal prices of the products, and the list prices function as "reference prices" from which the advertised discounts are calculated.

3. JCPenney's advertised discounts and reference prices are false because JCPenney rarely, if ever, offers its products at their advertised list price.

4. JCPenney's deceptive pricing scheme is intended to trick consumers into believing that its products are worth, and have a market value equal to, the inflated list price, and that the lower advertised "sale" price represents a special bargain. JCPenney perpetrates this illegal scheme in order to induce consumers to purchase its products and to charge more for its products than it otherwise could have charged.

5. JCPenney's false discount advertising harms consumers like Ms. Jones by causing them to pay more than they otherwise would have paid and to buy products that they otherwise would not have bought. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) ("[W]hen a consumer purchases merchandise on the basis of false price information, and when the consumer alleges that he would not have made the purchase but for the misrepresentation, he has standing to sue under the UCL and FAL because he has suffered an economic injury."). Customers do not enjoy the actual discounts JCPenney promises them, and

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

the items are not in fact worth the amount that JCPenney represents to them. JCPenney's deceptive pricing scheme also artificially increases the demand for its products and causes all customers, including Ms. Jones and Class members, to pay price premiums to JCPenney.

6.     JCPenney's false discount advertising violates California's Consumers Legal Remedies Act (CLRA), California Civil Code § 1750 *et seq.*; False Advertising Law (FAL), California Business & Professions Code § 17500 *et seq.*; and Unfair Competition Law (UCL), California Business & Professions Code § 17200 *et seq.*, in numerous ways, as detailed below.

7.     Ms. Jones brings this lawsuit individually and on behalf of a class of California consumers who purchased from JCPenney one or more products advertised with a discount. Ms. Jones seeks restitution and/or disgorgement for herself and for each of the California class members. Additionally, Ms. Jones, acting as a private attorney general, seeks public injunctive relief to protect the general public by enjoining JCPenney from engaging in the unlawful false advertising scheme alleged herein.

## II.     THE PARTIES

8.     Plaintiff Ellen Jones is a citizen and resident of the city of Oakdale, in Stanislaus County, California, and is an unsophisticated consumer party.

9.     Defendant Penney OpCo LLC is a limited liability company with its principal place of business in Plano, Texas. Penney OpCo LLC owns and/or operates the JCPenney website jcpenney.com and 659 JCPenney brick-and-mortar retail stores throughout the United States including 63 in California. Penney OpCo LLC has owned and managed the assets and brand name of JCPenney, including the JCPenney website and retail stores, since JCPenney emerged from Chapter 11 bankruptcy on December 7, 2020.

10.     Doe Defendants 1 to 5 are other entities related to Defendant Penney OpCo LLC who have engaged or are engaging in the unlawful acts alleged herein. Plaintiff anticipates amending this Complaint after discovery establishes the identities of these defendants.

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

## III. JURISDICTION AND VENUE

11. **Subject Matter Jurisdiction.** This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the amount in controversy, exclusive of interest and costs, exceeds $5,000,000, and this is a proposed class action in which there are members of the proposed Class who are citizens of a state different from the Defendant.

12. **Personal Jurisdiction.** This Court has personal jurisdiction over Defendant because, without limitation: (1) Defendant is authorized to do business and regularly conducts business in California; (2) the claims alleged herein took place in California; and/or (3) Defendant has committed tortious acts within California (as alleged, without limitation, throughout this Complaint). Defendant has sufficient minimum contacts with California to render the exercise of jurisdiction by this Court permissible.

13. **Venue.** Venue is proper pursuant to 28 U.S.C. §1391 because Plaintiff is a California citizen who resides in this District. Plaintiff also made her purchase in this District.

14. Venue is proper under Cal. Civil Code § 1780(d) because a substantial portion of the transactions at issue occurred in Stanislaus County. Plaintiff's declaration establishing that this Court is a proper venue for this action is attached hereto as **Exhibit A.**

## IV. JCPENNEY'S FALSE DISCOUNT ADVERTISING SCHEME

15. JCPenney operates JCPenney retail stores and its website, jcpenney.com, where it advertises, markets, and sells clothing, footwear, accessories, jewelry, home furnishings, beauty products, and other related items throughout California and the United States. JCPenney sells private and exclusive products of in-house brands that are only available from JCPenney, as well as products from national brands.

16. For years, JCPenney has engaged in a massive false discount advertising scheme across approximately 90% of its products on the JCPenney website and in its retail stores. JCPenney advertises perpetual or near-perpetual discounts from a false higher reference price in order to trick its customers into believing the advertised "sale" price represents a special bargain from JCPenney's usual and regular prices. JCPenney's discounts typically range from between 25% to 70% off of JCPenney's advertised list prices for its products. However,

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

unbeknownst to its customers, JCPenney's "sales" are never-ending, and its products are never or virtually never offered at the supposed regular price. JCPenney perpetrates this illegal scheme in order to induce consumers to purchase its products and to increase the amount it can charge for its products.

17. JCPenney advertises these discounts extensively on its website, including in large banner images on its homepage; on the product listing pages; on the individual product pages; and on the checkout pages. JCPenney advertises these discounts in a variety of ways, such as, by stating that categories of products are "XX% off" or "up to XX% off"; by advertising strikethrough list prices next to lower, purported discount prices with the word "sale" in red font next to the price; by advertising on product pages "XX% off" next to a strikethrough list price and purported "sale" price (and often advertising in bold red font a selling price that is even lower than the "sale" price when using a provided coupon code); by advertising "Save $XX.XX with code" or "extra XX% off with coupon" in red font (where that coupon code is provided in the advertisement itself and JCPenney provides a prominent "Apply" button to apply the code in the shopping cart such that JCPenney ensures every single purchaser applies the coupon code and receives the purportedly discounted price); by describing a supposed discount price as a "LIMITED TIME SPECIAL!" or a "FLASH SALE!" in italicized red font; and by identifying the supposed savings next to each item in the customer's shopping cart, as well as stating "Total Savings: $XX.XX" directly below the total price of the order throughout the entire purchase process.

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

18.     Below are example screenshots from JCPenney's website:

**JCPenney Homepage July 24, 2024**



**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

# JCPenney Product List Page August 13, 2024



**New!** Levi's The Ultimate Western Womens Fitted Sleeve Western Shirt
**$48.65** *sale*
*$69.50*
★★★★★ 1



**New!** a.n.a Womens High Rise Straight Leg Jean
**$23.99** *with code* *$48*



Ambrielle Womens Short Sleeve 2-pc. Shorts Pajama Set
**$27.44** *with code* *$49*
★★★★★ 4

**New!** St. John's Bay-Plus Adaptive Womens Mid Rise Bootcut Easy-on + Easy-off Jean
**$27.99** *with code* *$58*



St. John's Bay Belted Mens Straight Fit Cargo Pant
**$25.59** *with code* *$58*
★★★★½ 113



Arizona Mens Rayon Short Sleeve Button-Up Shirt
**$23.99** *with code* *$36*
★★★★☆ 5



St. John's Bay Womens A-Line Skirt
**$22.39** *with code* *$44*
★★★★½ 11



St. John's Bay Womens V Neck Short Sleeve T-Shirt
*GOTTA HAVE IT PRICE!*
**$6.39** *with code* *$14*
★★★★½ 668



Yes, Please! Lab Created White Sapphire Sterling Silver Round 2-pc. Jewelry Set
*LIMITED TIME SPECIAL!*
**$15** *sale*
*$74.98*
★★★★★ 31

---

CLASS ACTION COMPLAINT

- 6 -

# JCPenney Product Page July 24, 2024



## JCPenney Shopping Cart August 12, 2024



CLASS ACTION COMPLAINT

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

19.     JCPenney likewise advertises these discounts extensively throughout its retail stores, including on large signs next to clothing racks, shelves, and tables. On these large signs, JCPenney advertises products with a "sale" price alongside the product's "reg." price. In some cases, JCPenney will also advertise a "XX% OFF" discount next to the "sale" price and "reg." price for the product. Below are example photos taken at a JCPenney retail store on August 14, 2024. All of the products listed in the photos below are exclusive products of in-house JCPenney brands that are only offered by JCPenney.

### JCPenney Retail Store Photos August 14, 2024







**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1
      20.     JCPenney advertises false regular prices and fake discounts for over 90% of the

2
products it offers.

3
      21.     For example, as reflected on the screenshot below, on August 21, 2024,

4
JCPenney represented that the "Worthington Womens Victoria Block Heel Pumps" had a

5
regular list price of $60 and were on "**sale**" for $34.99, such that consumers would save "41%

6
off" of the regular list price, and that consumers could purchase them now for even less,

7
"**$27.99** *with code* **_UMBRELLA_**." The Pumps were an exclusive JCPenney product from

8
JCPenney's in-house brand Worthington.

9

10
<strong>JCPenney Product Webpage August 21, 2024</strong>



21
      22.     In reality, the Worthington Womens Victoria Block Heel Pumps listed regular

22
price of $60 was not their regular price.

23
      23.     Instead, JCPenney always offered the Pumps at a discount from the purported

24
regular price of $60. Counsel's investigation shows that the Pumps were never—not for a

25
single day—offered at the $60 price. In fact, in the prior 6 months, the highest price the Pumps

26
were ever offered for was $33.99, and they typically were offered for between $17.99 and

27

28

---

**HATTIS & LUKACS**
11711 SE 8ᵗʰ St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

$31.99. And, in the prior month, JCPenney had usually offered the Pumps for between $17.99 and $19.99.

24. For example, as reflected on the screenshot below, on July 26, 2024, JCPenney offered the Pumps for $19.99:

## JCPenney Product Webpage July 26, 2024



25. Thus, JCPenney customers who purchased the Pumps during the purported August 21, 2024 "sale" at the $27.99 advertised discounted price (41% advertised discount plus an additional $7 off with the provided coupon code) were not receiving the advertised and promised discount. Indeed, customers who paid the supposed "sale" price (with two different supposed discounts applied) were actually being tricked by JCPenney into paying <u>more</u> than JCPenney's true regular price for the Pumps.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

26.     To use another product as an example, on August 21, 2024, JCPenney represented that the "Casual Comfort Solid 7-pc Dorm In A Bag" (the "Bedding") had a regular list price of $160 and was on "**sale**" for $89.99, such that consumers would save "43% off" of the regular list price, and that consumers could purchase it now for even less, "**$71.99** *with code* **_UMBRELLA_**." The Bedding was an exclusive JCPenney product from JCPenney's in-house brand Casual Comfort.

**JCPenney Product Webpage August 21, 2024**



27.     In reality, the Casual Comfort Solid 7-pc Dorm In A Bag's listed regular price of $160 was not its regular price. Instead, JCPenney had always advertised it at a discount from the purported regular price of $160—ever since JCPenney first introduced the product over a month earlier, around July 7, 2024.

28.     In fact, on the very first day that JCPenney offered the Bedding, JCPenney offered it for $59.99. And since then, JCPenney had usually offered the Bedding for between $59.99 and $62.99.

29.     Thus, customers who paid the supposed "sale" price of $71.99 for the Bedding on August 21, 2024, were not receiving the promised discount from the purported $160 regular

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

price. Indeed, they were actually being tricked by JCPenney into paying <u>more</u> than JCPenney's regular price for the Bedding.

30.     JCPenney also advertises "free" offers for its products, such as "Buy 1 Get 1 Free" or "Buy 1 Get 2 Free." Advertised "free" offers such as these are viewed both under the law and by reasonable consumers to mean that the consumer is getting the "free" item(s) at no cost in conjunction with the purchase of the first item at no more than that item's regular price. However, in all cases, JCPenney's promise of "Buy 1 Get 1 Free" or "Buy 1 Get 2 Free" is false or misleading. Whenever JCPenney makes such a purported "free" offer, JCPenney inflates the first item's selling price to its never otherwise charged list price. Because the item is "discounted" by up to 50-70% off the list price at all other times, this means JCPenney is directly recovering all of the cost, or even more than the cost, of the "free" item(s) by increasing the price of the first item, such that the free offer is illusory, and the customer is not getting any deal at all.

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

31.     For example, from July 27, 2024, through July 31, 2024, JCPenney offered the "Arizona Jean Co Fairhaven Womens Adjustable Strap Footbed Sandals" (the "Sandals") at their $60 list price with a "***BUY 1 GET 2 FOR FREE LIMITED TIME SPECIAL!***" The Sandals were an exclusive JCPenney product from JCPenney's in-house brand Arizona Jean Co.

32.     However, on August 1, 2024, when the "Buy 1 Get 2 Free" sales event had ended, JCPenney offered the Sandals for $13.99 using a provided coupon code. In other words, customers paid 43% <u>more</u> ($6.01 <u>more</u>) per pair of Sandals by buying them during the "Buy 1 Get 2 Free" sales event (at an average $20 per pair of Sandals) than they would have paid if they had skipped the "sale" and bought them afterwards at $13.99 per pair of Sandals.

33.     See the screenshots of the Sandals taken on July 31, 2024, and August 1, 2024, below.

| July 31, 2024 | August 1, 2024 |
|:---:|:---:|
|  |  |

34.     Meanwhile, the advertised regular price of $60 for the Arizona Jean Co Fairhaven Womens Adjustable Strap Footbed Sandals is not their true regular price. Rather,

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

since March 11, 2024, the most JCPenney had ever offered the Sandals for was $33.99, and the Sandals had usually been offered for between $13.99 and $24.99.

35.     Thus, customers never received the promised discount on the Sandals. And, when the Sandals were offered at the $60 price with a "free" offer, the customers were not receiving the "free" offer at all because JCPenney was directly recovering all of the cost—indeed, <u>more</u> than the cost—of the "free" item(s) by increasing the price of the first pair far above their regular selling price.

## V.     <u>PLAINTIFF'S ALLEGATIONS ARE BASED ON HER COUNSEL'S COMPREHENSIVE INVESTIGATION INTO JCPENNEY'S PRACTICES</u>

36.     Plaintiff's allegations are based on her counsel's comprehensive investigation into JCPenney's false discount advertising practices. Plaintiff's counsel has been monitoring and scraping JCPenney's website on an automated daily basis with a proprietary software program since October 10, 2015. Plaintiff's counsel has compiled and extracted daily pricing and marketing data from the JCPenney website for nearly all of the products JCPenney has offered during this time. In total, Plaintiff's counsel has assembled and analyzed a comprehensive historical database of daily prices and time-stamped screenshots of over 200 million daily product offerings for over 800,000 products over this period.

37.     Plaintiff's counsel's exhaustive big-data analysis of millions of data points, including since December 7, 2020 (the date Defendant Penney OpCo acquired and began managing the operations of JCPenney) shows that JCPenney has advertised perpetual or near-perpetual discounts for approximately 90% of the products that it offers. The advertised website-wide "sales" events and advertised percentage-off and dollar discounts were false, and JCPenney's list prices (i.e., reference prices) from which the discounts were calculated were false and inflated.

38.     Plaintiff's counsel also visited multiple JCPenney retail stores to investigate JCPenney's in-store practices. Based on the investigation of Plaintiff's counsel, JCPenney offers and advertises its products with identical list prices and at substantially the same sale prices both on the JCPenney website and in its retail stores.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

39.     In fact, JCPenney effectively treats its online and in-store sales channels as the same. Customers can make purchases through the JCPenney website and pick the items up in-store that same day. JCPenney also encourages its customers, in-store, to view JCPenney's website for additional colors or styles of the items that the customers are viewing live in the retail store. JCPenney even has its own JCPenney app to make shopping easier to do on the phone.

## VI.    JCPENNEY'S FALSE DISCOUNT ADVERTISING SCHEME HARMS CONSUMERS AND VIOLATES CALIFORNIA LAW

40.     Decades of academic research has established that the use of reference prices and discount advertising like that utilized by JCPenney materially impacts consumers' behavior. A reference price affects a consumer's perception of the value of the transaction, the consumer's willingness to make the purchase, and the amount of money the consumer is willing to pay for the product.[1]

---

[1] *See, e.g.*, Richard Staelin, Joel E. Urbany & Donald Ngwe, *Competition and the Regulation of Fictitious Pricing*, 87 J. of Mktg. 826 (2023); Mark Armstrong & Yongmin Chen, *Discount Pricing*, 58 Econ. Inquiry 1614 (2020); Rajesh Chandrashekaran & Dhruv Grewal, *Assimilation of Advertised Reference Prices: The Moderating Role of Involvement*, 79 J. Retailing 53 (2003); Pilsik Choi & Keith S. Coulter, *It's Not All Relative: The Effects of Mental and Physical Positioning of Comparative Prices on Absolute Versus Relative Discount Assessment*, 88 J. Retailing 512 (2012); Larry D. Compeau & Dhruv Grewal, *Comparative Price Advertising: An Integrative Review*, 17 J. Pub. Pol'y & Mktg. 257 (1998); Larry D. Compeau, Dhruv Grewal & Rajesh Chandrashekaran, *Comparative Price Advertising: Believe It or Not*, 36 J. Consumer Aff. 284 (2002); David Friedman, *Reconsidering Fictitious Pricing*, 100 Minn. L. Rev. 921 (2016); Dhruv Grewal & Larry D. Compeau, *Consumer Responses to Price and its Contextual Information Cues: A Synthesis of Past Research, a Conceptual Framework, and Avenues for Further Research*, in 3 Rev. of Mktg. Res. 109 (Naresh K. Malhotra ed., 2007); Daniel J. Howard & Roger A. Kerin, *Broadening the Scope of Reference Price Advertising Research: A Field Study of Consumer Shopping Involvement*, 70 J. Mktg. 185 (2006); Aradhna Krishna, Richard Briesch, Donald R. Lehmann & Hong Yuan, *A Meta-Analysis of the Impact of Price Presentation on Perceived Savings*, 78 J. Retailing 101 (2002); Balaji C. Krishnan, Sujay Dutta & Subhash Jha, *Effectiveness of Exaggerated Advertised Reference Prices: The Role of Decision Time Pressure*, 89 J. Retailing 105 (2013); Gorkan Ahmetoglu, Adrian Furnham, & Patrick Fagan, *Pricing Practices: A Critical Review of their Effects on Consumer Perceptions and Behavior*, 21 J. of Retailing & Consumer Servs. 696 (2014); Bruce L. Alford & Abhijit Biswas, *The Effects of Discount Level, Price Consciousness and Sale Proneness on Consumers' Price Perception and Behavioral Intention*, 55 J. Bus. Res. 775 (2002); and Tridib Mazumdar, S. P. Raj & Indrahit Sinha, *Reference Price Research: Review and Propositions*, 69 J. Mktg. 84 (2005).

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

41.     When a reference price and corresponding discount is bona fide and truthful, it may help consumers in making informed purchasing decisions. In contrast, consumers are harmed when retailers, such as JCPenney, advertise their products with inflated false reference prices. The false reference prices deceive consumers, deprive consumers of a fair opportunity to accurately evaluate the offer, and result in purchasing decisions based on false pretenses.

42.     As a direct and proximate result of JCPenney's false reference prices and false discounts, Plaintiff and Class members were harmed and lost money or property.

43.     First, Plaintiff and Class members were harmed because they would not have purchased the items at the prices they paid had they known that the discounts were fake and that the items had not in fact been regularly offered at the higher listed price. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) ("[W]hen a consumer purchases merchandise on the basis of false price information, and when the consumer alleges that he would not have made the purchase but for the misrepresentation, he has standing to sue under the UCL and FAL because he has suffered an economic injury."). Consumers that are presented with discounts are substantially more likely to make the purchase. "Nearly all consumers (94%) search for a deal or offer when shopping online," "81% of [consumers] say finding a great offer or discount is on their mind throughout the entire purchase journey," and "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount." RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

44.     Second, Plaintiff and Class members were harmed because they did not receive the benefits of their bargain. Plaintiff and Class members did not enjoy the actual discounts JCPenney represented and promised to them. Plaintiff and Class members did not receive items that were worth the inflated amount that JCPenney represented to them; the items did not regularly sell for, and did not have a market value of, the fictitious and invented list price advertised by JCPenney.

45.     Third, Plaintiff and Class members were harmed because they paid a price premium due to illegitimately inflated demand resulting from JCPenney's deceptive pricing

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

scheme. JCPenney's false discount advertising scheme artificially increases consumer demand for JCPenney's products, which shifts the demand curve and allows JCPenney to charge more for its products than it otherwise could have charged (i.e., a price premium) absent the misrepresentations. JCPenney's false advertising scheme has enabled JCPenney to charge everyone more for all of its products by artificially stimulating demand based on false pretenses. *See*, *e.g.*, Richard Staelin, Joel E. Urbany & Donald Ngwe, *Competition and the Regulation of Fictitious Pricing*, 87 J. of Mktg. 826, 836 (2023) (observing that "numerous empirical studies on the effects of promotions" have shown that promotions cause an "outward shift" in the demand curve (i.e., a price premium), which can be "substantial").

46.     In addition to harming consumers, the practice of employing false reference prices and false discounts also negatively affects the integrity of competition in retail markets. A retailer's use of false reference prices constitutes an unfair method of competition and harms honest competitors that sell the same or similar products, or otherwise compete in the same market, using valid and accurate reference prices and true "sales." Businesses who play by the rules—and the investors in those businesses—are penalized if the unlawful advertising practices of their competitors go unchecked.

47.     Federal and state courts have articulated the abuses that flow from false discount advertising pricing practices. For example, the Ninth Circuit explained: "Most consumers have, at some point, purchased merchandise that was marketed as being 'on sale' because the proffered discount seemed too good to pass up. Retailers, well aware of consumers' susceptibility to a bargain, therefore have an incentive to lie to their customers by falsely claiming that their products have previously sold at a far higher 'original' price in order to induce customers to purchase merchandise at a purportedly marked-down 'sale' price." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013).

48.     The California Court of Appeal has likewise recognized the importance of California's false discount advertising statutes in protecting consumers: "Our Legislature has adopted multiple statutes that specifically prohibit the use of deceptive former price information and misleading statements regarding the amount of a price reduction. … These

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

statutes make clear that … our Legislature has concluded 'reasonable people can and do attach importance to [a product's reference price] in their purchasing decisions.'" *Hansen v. Newegg.com Americas, Inc.*, 25 Cal. App. 5th 714, 730 (2018) (quoting *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 333 (2011)).

49.    California law prohibits false reference pricing practices such as those perpetrated by JCPenney.

50.    California's Consumers Legal Remedies Act (CLRA) prohibits "advertising goods or services with the intent not to sell them as advertised," and specifically prohibits "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions." Cal. Civ. Code § 1770(a)(9), (13).

51.    California's False Advertising Law (FAL) prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely indicating that a product is on sale, when it actually is not. Moreover, the FAL specifically provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding [the advertisement] or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement." Cal. Bus. & Prof. Code § 17501.

52.    Finally, California's Unfair Competition Law broadly bans all unlawful, unfair, and deceptive business practices. Cal. Bus. & Prof. Code § 17200.

53.    In addition, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons." 16 C.F.R § 233.1. For example, an advertised former price is false when it is "an artificial, inflated price [that] was established for the purpose of enabling the subsequent offer of a large reduction—the 'bargain' being advertised is a false one; the purchaser is not receiving the unusual value he expects." 16 C.F.R § 233.1(a).

54.    The Federal Trade Commission also warns sellers advertising "Free" offers that "such offers must be made with extreme care so as to avoid any possibility that consumers will be misled or deceived." 16 C.F.R. § 251.1(a)(2). "[W]hen the purchaser is told that an article is

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

'Free' to him if another article is purchased, the word 'Free' indicates that he is paying nothing for that article and no more than the regular price for the other. Thus, a purchaser has a right to believe that the merchant will not directly and immediately recover, in whole or in part, the cost of the free merchandise or service by marking up the price of the article which must be purchased[.]" 16 C.F.R. § 251.1(b)(1). Accordingly, it is deceptive for a seller making a "Free" offer to "increase[] his regular price of the article required to be bought." 16 C.F.R § 233.4(b).

55.     "Regular price" means "the price, in the same quantity [and] quality, … at which the seller or advertiser of the product or service has openly and actively sold the product or service in the geographic market or trade area in which he is making a 'Free' or similar offer in the most recent and regular course of business, for a reasonably substantial period of time, i.e., a 30–day period." 16 C.F.R. § 251.1(b)(2).

56.     A UCL claim may be predicated on a violation of the Federal Trade Commission's regulations under the UCL's "unlawful" prong. *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 567 (9th Cir. 2017).

57.     As alleged in detail above, JCPenney's advertised reference prices and discounts violate California law because, based on the investigation of Plaintiff's counsel, JCPenney's advertised reference prices are inflated and fictitious, and JCPenney's advertised percentage-off and dollars-off discounts are false. JCPenney's reference prices and discounts are false because JCPenney advertises perpetual discounts for approximately 90% of its products, and rarely if ever offers its discounted products at their advertised list price.

58.     Additionally, because JCPenney advertises perpetual discounts, its advertised former prices were not true former prices and were not the prevailing market price in the three months immediately preceding the advertisement. This is true for JCPenney's exclusive products because JCPenney's own actual selling prices determine the prevailing market price. *People v. Superior Ct. (J.C. Penney Corp.)*, 34 Cal. App. 5th 376, 409 (2019). This is also true for JCPenney's non-exclusive products "because in competitive markets, the actual prices offered by vendors selling the same item tend to converge on the market price." *Id.* at 416–17. Since JCPenney's advertised former prices are consistently higher than their actual prices, the

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

only reasonable inference is that those advertised prices were not the prevailing market prices during the requisite three-month period. *See id.* at 417; *see also Phillips v. Brooklyn Bedding LLC*, 2024 WL 2830663, at *5 (N.D. Cal. Mar. 28, 2024) ("[Plaintiff] need not identify the prices charged by other retailers to plausibly allege that the strikethrough prices were not the prevailing market prices. Instead, the Court can reasonably infer on a motion to dismiss that [Defendant] 'would not continually sell products for prices' for 'less than the market rates at which those products are offered elsewhere.'"); *Vizcarra v. Michaels Stores, Inc.*, 2024 WL 64747, at *5 (N.D. Cal. Jan. 5, 2024) (same); *Knapp v. Art.com, Inc.*, 2016 WL 3268995, at *5 (N.D. Cal. June 15, 2016) (same).

59.     Additionally, as alleged in detail above, JCPenney advertises "free" offers for its products (such as "Buy 1 Get 1 Free" or "Buy 1 Get 2 Free"), but the "free" item(s) are not actually free because JCPenney charges a price for the purchased item that is higher than the item's regular price. In doing so, JCPenney directly recovers all, and often more than, the cost of the "free" item(s) by increasing the price of the first item, such that the "free" offer is illusory, and the customer is not getting any deal at all.

60.     The false reference price and false discount representations by JCPenney were material to the decisions of consumers to purchase each product. Because of the false reference price and false discount representations, consumers reasonably believed they would be receiving significant savings if they purchased these products, and consumers purchased these products on the basis of these representations in order to enjoy the purported discounts.

61.     JCPenney's marketing plan is to deceive its customers into believing that its products are worth, and have a market value equal to, the inflated list price, and that the lower advertised sale price represents a special bargain.

62.     The false or misleading nature of JCPenney's reference prices and discounts was, at all relevant times, masked or concealed such that an ordinary consumer exercising reasonable care under all the circumstances would not have known or discovered their false or misleading nature.

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

63.     As a direct and proximate result of JCPenney's acts and omissions, all California consumers who have purchased a product from JCPenney that was advertised with a reference price or purported discount (including "free" offers, such as "Buy 1 Get 1 Free" or "Buy 1 Get 2 Free") have been harmed and have lost money or property.

64.     JCPenney continues to advertise false reference prices and false discounts to this day. There is no reason to believe that JCPenney will voluntarily and permanently cease its unlawful practices. Moreover, in the unlikely event that JCPenney were to cease its unlawful practices, JCPenney can and is likely to re-commence these unlawful practices.

65.     In acting toward consumers and the general public in the manner alleged herein, JCPenney acted with and was guilty of malice, fraud, and oppression and acted in a manner with a strong and negative impact upon Plaintiff, the Class, and the public.

## VII.     PLAINTIFF'S FACTUAL ALLEGATIONS

66.     Plaintiff Ellen Jones is, and at all relevant times has been, a citizen and resident of the city of Oakdale, in Stanislaus County, California.

67.     Ms. Jones is a victim of JCPenney's false discount advertising scheme.

68.     As detailed above, JCPenney's false discounting practices have been ongoing since at least December 7, 2020, the date Defendant Penney OpCo LLC acquired and began managing the operations of JCPenney. During this time, Ms. Jones has purchased products from JCPenney which were advertised with false reference prices and false discounts.

69.     For example, on May 12, 2022, Ms. Jones visited the JCPenney website to shop for clothing. That day, Ms. Jones viewed and ultimately purchased some items from the JCPenney website. While browsing JCPenney's website, Ms. Jones viewed pricing and discount representations similar to those described in detail above. For example, Ms. Jones viewed on the JCPenney homepage descriptions of purported "sales events" that were currently being offered by JCPenney. As shown in the screenshot below, JCPenney advertised on its homepage, which Ms. Jones viewed, a sales event of "up to 40% OFF select styles," and an advertising banner (which appeared at the top of every page of the website) which stated: "Up to 50% Off + Extra 15% Off with code: AWESOME."

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

**Homepage of JCPenney Website May 12, 2022**



**Webpage on JCPenney's Website**
**May 12, 2022**



**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

71.     As shown above, the T-Shirt was advertised with a strikethrough list price of "$22" and a sale price of "**$12.74 *with code***".

72.     Ms. Jones clicked on the T-Shirt listing, which directed her to the product page for the T-Shirt. There, Ms. Jones viewed a strikethrough list price of "$22" for the T-Shirt. Directly below this strikethrough list price, Ms. Jones viewed the "sale" price of $12.74 with a coupon code.

73.     Relying on JCPenney's representations, Ms. Jones reasonably believed that the T-Shirt was normally offered and sold by JCPenney for the $22 list price. Ms. Jones reasonably believed that the T-Shirt was thereby worth and had a market value of $22. Ms. Jones reasonably believed that the advertised sale price of $12.74 represented a special and unusual bargain, where JCPenney was temporarily offering the T-Shirt at $9.26 off (42% off) the regular and normal selling price of $22. Relying on JCPenney's representations, Ms. Jones added three of the T-Shirts (one in Black, one in White, and one in American Navy) to her online shopping cart and ultimately purchased them that day.

74.     Ms. Jones purchased the T-Shirts by going through JCPenney's online checkout process. There, JCPenney made additional false discount representations. During the checkout process, Ms. Jones clicked on the prominent "Apply" coupon code button to automatically apply the coupon code which was again featured in the shopping cart. JCPenney also featured a "Total Savings" dollar amount in red directly below the total price of the order throughout the checkout process, which amount JCPenney calculated by adding together the falsely advertised discount amounts for the items in her cart.

75.     Relying on JCPenney's misrepresentations, Ms. Jones purchased the items. As part of the online purchase process, Ms. Jones chose to pick up the order with the T-Shirts in person from JCPenney's Turlock, California retail store.

76.     However, JCPenney's pricing representations and advertised discounts were false and deceptive. In reality, and unbeknownst to Ms. Jones, JCPenney had <u>never</u> offered the T-Shirt at the purported regular price of $22. The T-Shirt was not in fact worth the $22 price that JCPenney had led her to believe. Instead, JCPenney had always advertised the T-Shirt at a

HATTIS & LUKACS
11711 SE 8ᵗʰ St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

discount from the purported regular price of $22—ever since JCPenney first introduced the product nearly two months earlier, around March 16, 2022.

77. In fact, on the very first day that JCPenney offered the T-Shirt for sale, JCPenney offered it for $11.99—which was $0.75 <u>less</u> than what Ms. Jones paid. Indeed, JCPenney offered the T-Shirt for <u>less</u> than what Ms. Jones paid 50 out of the 56 days that JCPenney had offered the T-Shirt for sale prior to the date of her purchase (e.g., from March 16, 2022, to May 12, 2022). During these 50 days, JCPenney offered the T-Shirt for between $10.49 and $11.99. With its false discount representations, JCPenney had tricked Ms. Jones into paying <u>more</u> than JCPenney's true regular price for the T-Shirt.

78. JCPenney's advertised reference prices and discounts were material misrepresentations and inducements to Ms. Jones's purchases.

79. Ms. Jones reasonably relied on JCPenney's material misrepresentations regarding the advertised reference prices and discounts. If Ms. Jones had known the truth, she would not have purchased the products at the prices she paid.

80. As a direct and proximate result of JCPenney's acts and omissions, Ms. Jones was harmed, suffered an injury-in-fact, and lost money or property.

81. When Ms. Jones shopped at JCPenney, she had no suspicion that JCPenney's advertised reference prices and discounts were false. JCPenney gave Ms. Jones no reason to be suspicious. Ms. Jones first learned of JCPenney's false advertising scheme in August 2024 when her attorneys told her about JCPenney's unlawful conduct and informed her that she was likely a victim of the scheme. Prior to this, Ms. Jones did not know or suspect that JCPenney was engaging in a false discount advertising scheme or that she had been a victim of the scheme.

82. Ms. Jones has a legal right to rely now, and in the future, on the truthfulness and accuracy of JCPenney's representations regarding the advertised reference prices and discounts for its products.

83. Ms. Jones faces an imminent threat of future harm. Ms. Jones would purchase from JCPenney again in the future if she could have confidence regarding the truth of

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

JCPenney's price and discount representations. But without an injunction, Ms. Jones has no realistic way of knowing which, if any, of JCPenney's list prices, discounts, and sales are not false or deceptive.

84. Ms. Jones will be harmed if, in the future, she is left to guess as to whether JCPenney is providing a legitimate sale or not, and whether its products are actually worth the amount that JCPenney is representing.

85. If Ms. Jones were to purchase again from JCPenney without JCPenney having changed its unlawful and deceptive conduct alleged herein, Ms. Jones would be harmed on an ongoing basis and/or would be harmed once or more in the future.

86. The deceptive practices and policies alleged herein, and experienced directly by Ms. Jones, are not limited to any single product or group of products. Rather, JCPenney's deceptive advertising and sales practices, which advertise and state false reference prices and false percentage-off and dollar-off discounts, were, and continue to be, systematic and pervasive across all of JCPenney's products.

## CLASS ALLEGATIONS

87. Plaintiff brings this lawsuit on behalf of herself and all others similarly situated, pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3).

88. **Class Definition:** Plaintiff seeks to represent the following Class:

> **All persons who, while in California, within the applicable statute of limitations period, purchased from JCPenney one or more products advertised at a discount.**

89. Specifically excluded from the Class are JCPenney and any entities in which JCPenney has a controlling interest, JCPenney's agents and employees, the bench officers to whom this civil action is assigned, and the members of each bench officer's staff and immediate family.

90. **Application of the Discovery Rule.** This Court should apply the discovery rule to extend any applicable limitations period and corresponding class period to the date on which JCPenney first engaged in its unlawful false discounting practices. Based on the investigation of Plaintiff's counsel, JCPenney has engaged in its unlawful false discounting practices since at

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

least December 7, 2020, which is the date Defendant Penney OpCo LLC acquired and began managing the operations of JCPenney.

91. The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *E-Fab, Inc. v. Accts., Inc. Servs.*, 153 Cal. App. 4th 1308, 1318 (2007). Plaintiff and the members of the Class did not know, and could not have reasonably known, about JCPenney's unlawful conduct.

92. When Plaintiff shopped at JCPenney, she had no suspicion that JCPenney's advertised reference prices and discounts were false. JCPenney gave Plaintiff no reason to be suspicious. Plaintiff first learned of JCPenney's false advertising scheme in August 2024 when her attorneys told her about JCPenney's unlawful conduct and informed her that she was likely a victim of the scheme. Prior to this, Plaintiff did not know or suspect that JCPenney was engaging in a false discount advertising scheme or that she had been a victim of the scheme.

93. Likewise, Class members would not know or suspect that JCPenney was engaging in this deceptive pricing scheme. Reasonable consumers reasonably presume that retailers are not engaging in unlawful conduct. Reasonable consumers would believe that JCPenney's pricing and discount representations were true. Reasonable consumers would believe that JCPenney's list prices (1) represent the regular and normal prices that consumers had to pay for the products; (2) represent the recent former prices of the products (that is, the prices at which the products were regularly offered for sale before the limited-time offer went into effect); and (3) represent the prices that consumers will have to pay for the products when the sale ends. Reasonable consumers would believe that JCPenney's advertised discounts represent a reduction from the regular and recent former prices of the products in the amounts advertised.

94. Moreover, Plaintiff and the Class could not have, with the exercise of reasonable diligence, discovered JCPenney's false advertising scheme because, by design, its very nature is hidden and impossible for a reasonable consumer to discover.

95. Consumers who shopped at JCPenney would have no way of knowing, with the exercise of reasonable diligence, the true daily price histories and past selling prices for the

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

products they viewed and purchased. Consumers would have no way to know, with the exercise of reasonable diligence, that the advertised list prices were fictitious and inflated and that the advertised percentage-off and dollars-off savings were false.

96.    Plaintiff's counsel only found evidence for JCPenney's deceptive pricing scheme by conducting an extensive and expensive investigation that no reasonable person would conduct.

97.    **Numerosity.** The number of members of the Class are so numerous that joinder of all members would be impracticable. Plaintiff does not know the exact number of Class members prior to discovery. However, based on information and belief, the Class comprises millions of individuals. The exact number and identities of Class members are contained in JCPenney's records and can be easily ascertained from those records.

98.    **Commonality and Predominance.** This action involves multiple common legal or factual questions which are capable of generating class-wide answers that will drive the resolution of this case. These common questions predominate over any questions affecting individual Class members, if any. These common questions include, but are not limited to, the following:

a.    Whether the alleged conduct of JCPenney violates the California Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.*;

b.    Whether the alleged conduct of JCPenney violates the California False Advertising Law, California Business & Professions Code § 17500 *et seq.*;

c.    Whether the alleged conduct of JCPenney violates the California Unfair Competition Law, California Business & Professions Code § 17200 *et seq.*;

d.    Whether the alleged conduct of JCPenney violates 16 C.F.R § 233.1 *et seq.* and 16 C.F.R. § 251.1;

e.    Whether Plaintiff and the Class have suffered injury and have lost money or property as a result of JCPenney's unlawful conduct; and

f.    Whether JCPenney should be enjoined from engaging in the unlawful conduct alleged herein.

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

99. **Typicality.** Plaintiff's claims are typical of Class members' claims. Plaintiff and Class members all sustained injury as a direct result of JCPenney's standard practices and schemes, bring the same claims, and face the same potential defenses.

100. **Adequacy.** Plaintiff and her counsel will fairly and adequately protect Class members' interests. Plaintiff has no interests antagonistic to Class members' interests and is committed to representing the best interests of the Class members. Moreover, Plaintiff has retained counsel with considerable experience and success in prosecuting complex class action and consumer protection cases.

101. **Superiority.** A class action is superior to all other available methods for fairly and efficiently adjudicating this controversy. Each Class member's interests are small compared to the burden and expense required to litigate each of his or her claims individually, so it would be impractical and would not make economic sense for Class members to seek individual redress for JCPenney's conduct. Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system. Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct. A single adjudication would create economies of scale and comprehensive supervision by a single judge. Moreover, Plaintiff does not anticipate any difficulties in managing a class action trial.

102. By its conduct and omissions alleged herein, JCPenney has acted and refused to act on grounds that apply generally to the Class members, such that declaratory relief is appropriate respecting the Class as a whole.

103. JCPenney is primarily engaged in the business of selling goods. Each cause of action brought by Plaintiff against JCPenney in this Complaint arises from and are limited to statements or conduct by JCPenney that consist of representations of fact about JCPenney's business operations or goods that are or were made for the purpose of obtaining approval for, promoting, or securing sales of or commercial transactions in, JCPenney's goods or the statements are or were made in the course of delivering JCPenney's goods. Each cause of action brought by Plaintiff against JCPenney in this Complaint arises from and is limited to

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

statements or conduct by JCPenney for which the intended audience is an actual or potential customer, or a person likely to repeat the statements to, or otherwise influence, an actual or potential customer.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation of the Consumers Legal Remedies Act ("CLRA")**
**California Civil Code § 1750 *et seq*.**

104.    Plaintiff Ellen Jones realleges and incorporates by reference all paragraphs previously alleged herein.

105.    Plaintiff brings this claim in her individual capacity, in her capacity as a private attorney general seeking the imposition of public injunctive relief to protect the general public, and as a representative of the Class.

106.    JCPenney's products are "goods" as defined by California Civil Code § 1761(a).

107.    JCPenney is a "person," as defined by Cal. Civ. Code § 1761(c).

108.    Plaintiff and Class members are each "consumers," as defined by Cal. Civ. Code §1761(d).

109.    Plaintiff and Class members purchased JCPenney's products for personal, family, and/or household purposes, as meant by Cal. Civ. Code § 1761(d).

110.    Plaintiff and Class members' purchases from JCPenney each constitutes a "transaction," as defined by Cal. Civ. Code § 1761(e).

111.    Venue is proper under Cal. Civil Code § 1780(d) because a substantial portion of the transactions at issue occurred in Stanislaus County. Plaintiff's declaration establishing that this Court is a proper venue for this action is attached hereto as **Exhibit A.**

112.    The unlawful methods, acts or practices alleged herein to have been undertaken by JCPenney were all committed intentionally and knowingly. The unlawful methods, acts or practices alleged herein to have been undertaken by JCPenney did not result from a bona fide error notwithstanding the use of reasonable procedures adopted to avoid such error.

113.    JCPenney's conduct alleged herein has violated the CLRA in multiple respects, including, but not limited to, the following:

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

a. JCPenney represented that its products had characteristics that they did not have. (Cal. Civ. Code § 1770(a)(5));

b. JCPenney advertised its products with an intent not to sell them as advertised. (Cal. Civ. Code § 1770(a)(9));

c. JCPenney made false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions (Cal. Civ. Code § 1770(a)(13)); and

d. JCPenney misrepresented that its products were supplied in accordance with previous representations when they were not. (Cal. Civ. Code § 1770(a)(16)).

114. With respect to any omissions, JCPenney at all relevant times had a duty to disclose the information in question because, inter alia: (a) JCPenney had exclusive knowledge of material information that was not known to Plaintiff and Class members; (b) JCPenney concealed material information from Plaintiff and Class members; and (c) JCPenney made partial representations which were false and misleading absent the omitted information.

115. JCPenney intentionally deceived Plaintiff and the Class, and continues to deceive the public, by advertising false discounts, false reference prices, and false "free" offers.

116. JCPenney's misrepresentations deceive and have a tendency to deceive the reasonable consumer and the general public.

117. JCPenney's misrepresentations are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

118. As a direct, substantial, and/or proximate result of JCPenney's unlawful conduct, Plaintiff and Class members were harmed, suffered injury-in-fact, and lost money or property.

119. Plaintiff and Class members reasonably relied on JCPenney's material misrepresentations, and would not have purchased JCPenney's products at the prices that they paid had they known the truth.

120. Plaintiff and Class members did not receive the benefits of their bargain. Plaintiff and Class members did not enjoy the actual discounts JCPenney represented and

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

promised to them. Plaintiff and Class members did not receive items that were worth the inflated amount that JCPenney represented to them; the items did not regularly sell for, and were not actually worth, the fictitious and invented list price advertised by JCPenney.

121. By its conduct and omissions alleged herein, JCPenney caused the demand for its products to be artificially increased and caused all customers, including Plaintiff and Class members, to pay price premiums to JCPenney. Put differently, as a result of its misrepresentations, JCPenney has been able to charge a price premium for its products that it would not be able to charge absent the misrepresentations.

122. **Permanent public injunctive relief.** Plaintiff, acting as a private attorney general, seeks public injunctive relief under the CLRA to protect the general public from JCPenney's false advertisements, misrepresentations, and omissions.

123. JCPenney's misconduct, which affects and harms the general public, is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by JCPenney absent a permanent public injunction. Accordingly, Plaintiff seeks an order enjoining JCPenney from committing the unlawful practices alleged herein.

124. The balance of the equities favors the entry of permanent public injunctive relief against JCPenney. Plaintiff, the members of the Class, honest competing businesses, and the general public will be irreparably harmed from JCPenney's ongoing false advertising absent the entry of permanent public injunctive relief against JCPenney.

125. Plaintiff lacks an adequate remedy at law to prevent JCPenney from engaging in the unlawful practices alleged herein. Plaintiff would shop at JCPenney again if she could have confidence regarding the truth of JCPenney's prices and the value of its products. Plaintiff will be harmed if, in the future, she is left to guess as to whether JCPenney is providing a legitimate sale or not, and whether JCPenney's products are actually worth the amount that JCPenney is representing.

126. Monetary damages are not an adequate remedy at law for future harm. *Clark v. Eddie Bauer LLC*, 2024 WL 177755, at *3 (9th Cir. Jan. 17, 2024). Monetary damages are

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

inadequate for future harm for the following reasons, without limitation: <u>First</u>, damages are not an adequate remedy for future harm because they will not prevent JCPenney from engaging in its unlawful conduct. <u>Second</u>, damages for future harm cannot be calculated with certainty and thus cannot be awarded. For example, it is impossible to know what product(s) Plaintiff may want or need in the future. <u>Third</u>, injunctive relief is necessary (and monetary damages do not provide a plain, adequate and complete remedy) because, without forward-looking injunctive relief enjoining the unlawful practices, the courts would be flooded with future lawsuits by Class members, Plaintiff, and the general public for future violations of the law by JCPenney.

127.     In accordance with California Civil Code § 1782(a), Plaintiff, through counsel, is serving JCPenney with notice of its CLRA violations by certified mail, return receipt requested, on September 10, 2024. If JCPenney fails to provide appropriate relief for its CLRA violations within 30 days of its receipt of Plaintiff's notice letter, Plaintiff will amend this complaint to seek compensatory and exemplary damages as permitted by Cal. Civ. Code §§ 1780 and 1782(b), along with attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**Violation of California's False Advertising Law ("FAL")**
**California Business & Professions Code § 17500 *et seq*.**

128.     Plaintiff realleges and incorporates by reference all paragraphs previously alleged herein.

129.     Plaintiff brings this claim in her individual capacity, in her capacity as a private attorney general seeking the imposition of public injunctive relief, and as a representative of the Class.

130.     JCPenney has engaged in false or misleading advertising in violation of California Business & Professions Code § 17500, *et seq.*, also known as California's False Advertising Law ("FAL").

131.     JCPenney has advertised discounts, reference prices, and "free" offers that are false, misleading, and have a capacity, likelihood or tendency to deceive reasonable consumers. *See*, *e.g.*, *Kasky*, 27 Cal.4th at 951 (UCL and FAL prohibit "not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity,

CLASS ACTION COMPLAINT

- 32 -

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

likelihood or tendency to deceive or confuse the public" (citation omitted)); *Hansen v. Newegg.com Americas, Inc.*, 25 Cal. App. 5th 714, 722 (2018) (same); *Overstock.com, Inc.*, 2014 WL 657516, at *23 (Feb. 5, 2014, Cal. Sup. Ct.) (same).

132.    Additionally, JCPenney has violated, and continues to violate, section 17501 of the Business and Professions Code by advertising former prices that were not true former prices and were not the prevailing market price in the three months immediately preceding the advertisement. Nor do JCPenney's former price advertisements state clearly, exactly, and conspicuously when, if ever, the former prices prevailed.

133.    With respect to omissions, JCPenney at all relevant times had a duty to disclose the information in question because, inter alia: (a) JCPenney had exclusive knowledge of material information that was not known to Plaintiff and Class members; (b) JCPenney concealed material information from Plaintiff and Class members; and (c) JCPenney made partial representations which were false or misleading absent the omitted information.

134.    JCPenney committed such violations of the FAL with actual knowledge that its advertising was untrue or misleading, or JCPenney, in the exercise of reasonable care, should have known that its advertising was untrue or misleading.

135.    JCPenney's misrepresentations and nondisclosures deceive and have a tendency to deceive the general public.

136.    JCPenney's misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

137.    As a direct and proximate result of JCPenney's violations of the FAL, Plaintiff and Class members were harmed, suffered injury-in-fact, and lost money or property.

138.    Plaintiff and Class members reasonably relied on JCPenney's material misrepresentations, and would not have purchased JCPenney's products at the prices that they paid had they known the truth.

139.    Plaintiff and Class members did not receive the benefits of their bargain. Plaintiff and Class members did not enjoy the actual discounts JCPenney represented and

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

promised to them. Plaintiff and Class members did not receive items that were worth the inflated amount that JCPenney represented to them; the items did not regularly sell for, and were not actually worth, the fictitious and invented list price advertised by JCPenney.

140.    By its conduct and omissions alleged herein, JCPenney caused the demand for its products to be artificially increased and caused all customers, including Plaintiff and Class members, to pay price premiums to JCPenney. Put differently, as a result of its misrepresentations, JCPenney has been able to charge a price premium for its products that it would not be able to charge absent the misrepresentations.

141.    By its conduct and omissions alleged herein, JCPenney received more money from Plaintiff and Class members than it should have received. JCPenney should be ordered to disgorge or make restitution of all monies improperly accepted, received, or retained.

142.    Plaintiff seeks an order granting restitution to Plaintiff and Class members in an amount to be proven at trial. Plaintiff further seeks an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

143.    **Permanent public injunctive relief.** Plaintiff, acting as a private attorney general, seeks public injunctive relief under the FAL to protect the general public from JCPenney's false advertisements, misrepresentations, and omissions.

144.    JCPenney's misconduct which affects and harms the general public is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by JCPenney absent a permanent public injunction. Accordingly, Plaintiff seeks an order enjoining JCPenney from committing the unlawful practices alleged herein.

145.    The balance of the equities favors the entry of permanent public injunctive relief against JCPenney. Plaintiff, the members of the Class, honest competing businesses, and the general public will be irreparably harmed from JCPenney's ongoing false advertising absent the entry of permanent public injunctive relief against JCPenney.

146.    Plaintiff lacks an adequate remedy at law to prevent JCPenney from engaging in the unlawful practices alleged herein. Plaintiff would shop at JCPenney again if she could have

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

confidence regarding the truth of JCPenney's prices and the value of its products. Plaintiff will be harmed if, in the future, she is left to guess as to whether JCPenney is providing a legitimate sale or not, and whether JCPenney's products are actually worth the amount that JCPenney is representing.

147. Monetary damages are not an adequate remedy at law for <u>future</u> harm. *Clark v. Eddie Bauer LLC*, 2024 WL 177755, at *3 (9th Cir. Jan. 17, 2024). Monetary damages are inadequate for future harm for the following reasons, without limitation: <u>First</u>, damages are not an adequate remedy for future harm because they will not prevent JCPenney from engaging in its unlawful conduct. <u>Second</u>, damages for future harm cannot be calculated with certainty and thus cannot be awarded. For example, it is impossible to know what product(s) Plaintiff may want or need in the future. <u>Third</u>, injunctive relief is necessary (and monetary damages do not provide a plain, adequate and complete remedy) because, without forward-looking injunctive relief enjoining the unlawful practices, the courts would be flooded with future lawsuits by Class members, Plaintiff, and the general public for future violations of the law by JCPenney.

**THIRD CAUSE OF ACTION**
**Violation of California's Unfair Competition Law ("UCL")**
**California Business & Professions Code § 17200** *et seq.*

148. Plaintiff realleges and incorporates by reference all paragraphs previously alleged herein.

149. Plaintiff brings this claim in her individual capacity, in her capacity as a private attorney general seeking the imposition of public injunctive relief, and as a representative of the Class.

150. California Business & Professions Code § 17200, *et seq.*, also known as California's Unfair Competition Law ("UCL"), prohibits any unfair, unlawful, or fraudulent business practice.

151. **"Unlawful" Prong.** JCPenney has violated the UCL by engaging in the following unlawful business acts and practices:

　　　a. Making material misrepresentations in violation of Cal. Civ. Code §§ 1770(a)(5), (9), (13), and (16) (the CLRA);

CLASS ACTION COMPLAINT

\- 35 -

**HATTIS & LUKACS**
11711 SE 8ᵗʰ St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

b.　　Making material misrepresentations and omissions in violation of Cal. Bus. & Prof. Code § 17500 *et seq.* (the FAL);

c.　　Engaging in deceit in violation of Cal Civ. Code §§ 1709–1710; and

d.　　Employing deceptive discount price advertisements as identified by 16 C.F.R § 233.1 *et seq.* and 16 C.F.R. § 251.1.

152.　**"Unfair" and "Fraudulent" Prongs.** JCPenney has violated the UCL by engaging in the following unfair and/or fraudulent business acts and practices:

a.　　Advertising false reference prices;

b.　　Advertising false discounts, including percentage-off and dollar-off discounts; and

c.　　Advertising false "free" offers, such as "Buy 1 Get 1 Free" or "Buy 1 Get 2 Free," where JCPenney directly recovers the cost of the "free" items by at least doubling or tripling the first item's selling price to the inflated—and otherwise never charged—list price.

153.　With respect to omissions, JCPenney at all relevant times had a duty to disclose the information in question because, inter alia: (a) JCPenney had exclusive knowledge of material information that was not known to Plaintiff and Class members; (b) JCPenney concealed material information from Plaintiff and Class members; and (c) JCPenney made partial representations which were false and misleading absent the omitted information.

154.　JCPenney's misrepresentations and nondisclosures deceive and have a tendency to deceive the general public.

155.　JCPenney's misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

156.　As a direct and proximate result of JCPenney's violations of the UCL, Plaintiff and Class members were harmed, suffered injury-in-fact, and lost money or property.

157.　Plaintiff and Class members reasonably relied on JCPenney's material misrepresentations, and would not have purchased JCPenney's products at the prices that they paid had they known the truth.

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

158.     Plaintiff and Class members did not receive the benefits of their bargain. Plaintiff and Class members did not enjoy the actual discounts JCPenney represented and promised to them. Plaintiff and Class members did not receive items that were worth the inflated amount that JCPenney represented to them; the items did not regularly sell for, and were not actually worth, the fictitious and invented list price advertised by JCPenney.

159.     By its conduct and omissions alleged herein, JCPenney caused the demand for its products to be artificially increased and caused all customers, including Plaintiff and Class members, to pay price premiums to JCPenney. Put differently, as a result of its misrepresentations, JCPenney has been able to charge a price premium for its products that it would not be able to charge absent the misrepresentations.

160.     By its conduct and omissions alleged herein, JCPenney received more money from Plaintiff and Class members than it should have received. JCPenney should be ordered to disgorge or make restitution of all monies improperly accepted, received, or retained.

161.     JCPenney's conduct and omissions alleged herein are immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and Class members. Perpetrating a years-long scheme of misleading and overcharging customers is immoral, unethical, and unscrupulous. Moreover, JCPenney's conduct is oppressive and substantially injurious to consumers. There is no utility to JCPenney's conduct, and even if there were any utility, it would be significantly outweighed by the gravity of the harm to consumers caused by JCPenney's conduct alleged herein.

162.     Plaintiff seeks an order granting restitution to Plaintiff and Class members in an amount to be proven at trial. Plaintiff further seeks an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

163.     **Permanent public injunctive relief.** Plaintiff, acting as a private attorney general, seeks public injunctive relief under the UCL to protect the general public from JCPenney's false advertisements, misrepresentations, and omissions.

164.     JCPenney's misconduct which affects and harms the general public is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

repetition or re-occurrence by JCPenney absent a permanent public injunction. Accordingly, Plaintiff seeks an order enjoining JCPenney from committing the unlawful practices alleged herein.

165.    The balance of the equities favors the entry of permanent public injunctive relief against JCPenney. Plaintiff, the members of the Class, honest competing businesses, and the general public will be irreparably harmed from JCPenney's ongoing false advertising absent the entry of permanent public injunctive relief against JCPenney.

166.    Plaintiff lacks an adequate remedy at law to prevent JCPenney from engaging in the unlawful practices alleged herein. Plaintiff would shop at JCPenney again if she could have confidence regarding the truth of JCPenney's prices and the value of its products. Plaintiff will be harmed if, in the future, she is left to guess as to whether JCPenney is providing a legitimate sale or not, and whether JCPenney's products are actually worth the amount that JCPenney is representing.

167.    Monetary damages are not an adequate remedy at law for future harm. *Clark v. Eddie Bauer LLC*, 2024 WL 177755, at *3 (9th Cir. Jan. 17, 2024). Monetary damages are inadequate for future harm for the following reasons, without limitation: First, damages are not an adequate remedy for future harm because they will not prevent JCPenney from engaging in its unlawful conduct. Second, damages for future harm cannot be calculated with certainty and thus cannot be awarded. For example, it is impossible to know what product(s) Plaintiff may want or need in the future. Third, injunctive relief is necessary (and monetary damages do not provide a plain, adequate and complete remedy) because, without forward-looking injunctive relief enjoining the unlawful practices, the courts would be flooded with future lawsuits by Class members, Plaintiff, and the general public for future violations of the law by JCPenney.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

**PRAYER FOR RELIEF**

**A.    Public Injunctive Relief:**

Plaintiff Ellen Jones, acting as a private attorney general, requests that the Court enter a

public injunction against JCPenney under the CLRA, FAL, and UCL as follows:

1.    Permanently enjoin JCPenney from engaging in the unlawful conduct alleged

herein;

2.    Order that JCPenney maintain the following records for at least two years for

each daily product offering from the date of each advertisement and/or offer for sale of the

product, for auditing purposes to ensure compliance with the ordered public injunctive relief:

(1) the advertised list price for each product; (2) the offer price and/or net selling price of each

item; and (3) any discount percentage and/or any other discount that was advertised and/or

applicable to each product;

3.    Retain jurisdiction to monitor JCPenney's compliance with the permanent

public injunctive relief requested hereinabove; and

4.    Order JCPenney to pay attorneys' fees and costs.

**B.    Individual and Class Relief:**

Plaintiff Ellen Jones, on behalf of herself and the proposed Class, requests that the

Court order relief and enter judgment against JCPenney as follows:

1.    Declare this action to be a proper class action, certify the proposed Class, and

appoint Plaintiff and her counsel to represent the Class;

2.    Order that the discovery rule applies to extend any applicable limitations period

and the corresponding class period back to December 7, 2020 (the date Defendant Penney

OpCo LLC acquired and began managing the operations of JCPenney);

3.    Declare that JCPenney's conduct alleged herein violates the CLRA, FAL, and

UCL;

4.    Order disgorgement and/or restitution, including, without limitation,

disgorgement of all revenues, profits and/or unjust enrichment that JCPenney obtained, directly

CLASS ACTION COMPLAINT

- 39 -

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

or indirectly, from Plaintiff and Class members as a result of the unlawful conduct alleged herein;

5.      Order JCPenney to pay attorneys' fees, costs, and pre-judgment and post-judgment interest to the extent allowed by law; and

6.      Grant such other relief as this Court deems just and proper.

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff demands a trial by jury on all issues so triable.

Date: September 9, 2024.

Presented by:

HATTIS & LUKACS

By: _____

Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Telephone: (425) 233-8650
Email: dan@hattislaw.com
Email: pkl@hattislaw.com

*Attorneys for Plaintiff*
*and the Proposed Class*

CLASS ACTION COMPLAINT

- 40 -

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com